**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LEANDA M. AULT,

       Plaintiff,

v.                                     No. 1:25-cv-0640 KG/DLM

FRANK BISIGNANO,
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Leanda Ault's Opening Brief, which asks the Court to enter an order finding disability or to remand this case for further proceedings. (Doc. 12.) Having considered the record, submissions of counsel, and the relevant law, the Court recommends that the motion be **DENIED**.[1]

## I.    Procedural History

On July 22, 2021, Ault filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) under Title II of the Social Security Act (SSA). (Administrative Record (AR) at 198, 201.[2]) Ault alleged a disability onset date of June 9, 2021. (*Id.* at 201.) Disability Determination Services (DDS) determined that Ault was not disabled initially and on reconsideration. (*See id.* at 60–95.) Ault requested a hearing before an Administrative Law Judge (ALJ) to challenge the decision. (*Id.* at 114–15.)

---

[1] Chief United States District Judge Kenneth J. Gonzales entered an Order of Reference Relating to Social Security Appeals on February 2, 2026, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 21.)

[2] Document 9 contains the sealed Administrative Record. (*See* Docs. 9-1–9-9.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Both Ault and a vocational expert (VE) testified during the de novo hearing. (*See id.* at 34–59.) ALJ Tresie Kinnell issued an unfavorable decision on July 5, 2024. (*Id.* at 10–21.) Ault submitted a request for review of the ALJ's decision, which the Appeals Council ultimately denied on May 6, 2025. (*Id.* at 1–6, 190–92.) Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and of what she can still do despite . . . her limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national

economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Kinnell found that although Ault engaged in some work after June 9, 2021, she "has not engaged in substantial gainful activity since June 9, 2021, the alleged onset date." (AR at 13 (citing 20 C.F.R. §§ 404.1571–76).)

At Step Two, the ALJ concluded that Ault "has the following severe impairments: tachycardia; anxiety state/general anxiety; depressive disorder/dysthymia; somatic symptom disorder, with severe, predominant, persistent pain; and major depressive disorder, recurrent, severe without psychosis, with anxious distress." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) She also considered several other medical issues and found they were non-severe. (*Id.*)

At Step Three, the ALJ found that Ault "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

At Step Four, the ALJ considered the evidence of record and found that Ault:

has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day. She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch and crawl. [She] is precluded from exposure to heights and hazardous machinery with moving mechanical parts. She is precluded from concentrated exposure to extreme heat and cold, humidity, wetness, fumes, odors, dusts, gases, and poor ventilation, [She] can understand, remember, and carry out only simple tasks and use judgment to make simple work-related decisions. She cannot perform work requiring a specific production rate, such as assembly line work, nor can she perform work requiring hourly quotas. [She] requires a low-stress work environment defined as no more than occasional changes in work tasks, no interaction with the public, and no more than occasional interaction with coworkers and supervisors.

(*Id.* at 15.) Based on her review of the record and the testimony of the VE, ALJ Kinnell found that Ault "is unable to perform any past relevant work." (*Id.* at 19 (citing 20 C.F.R. § 404.1565).) The ALJ further found that Ault can perform other work and therefore has not been under a disability from June 9, 2021, through the date of the decision. (*See id.* at 20 (citing 20 C.F.R. § 404.1520(g)).)

## III.     Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether the ALJ adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 589 U.S. 97, 102 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably

have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

**IV.    Discussion**

Ault argues that remand is warranted because the ALJ failed to: (1) adequately incorporate the state agency opinions into the RFC determination; and (2) properly evaluate the opinions of the state psychological consultative examiners. (*See* Doc. 12 at 7–17.)

**A.    The ALJ adequately accounted for the state agency opinions.**

Ault argues that remand is warranted because the ALJ failed to account for limitations the state agency psychological consultants recorded in the worksheet portion of the Mental Residual Functional Capacity (MRFC) assessment but did not explicitly address in the narrative portion.[3] (*See* Doc. 12 at 7–11.) At issue are the moderate limitations opined by either Bonnie R. Chavez, Ph.D., and/or Karen Ying, M.D., in Ault's abilities to: "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances [('maintain regular attendance')]," "sustain an ordinary routine without special supervision," "work in coordination with or proximity to others without being distracted by them," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods [('complete a normal workday')]," "accept instructions and

---

[3] Previously, state agency consultants recorded their opinions on a form that was "divided into Section I ('Summary Conclusions' containing checkboxes) and Section III ('Functional Capacity Assessment')."*Bernadette S. v. King*, No. 1:24-cv-0124 JB/GJF, 2025 WL 399735, at *5 n.4 (D.N.M. Feb. 5, 2025), *R&R adopted sub nom. Bernadette S. v. Dudek*, 2025 WL 892944 (D.N.M. Mar. 24, 2025) (citing *Vienna v. Saul*, No. 2:18-cv-0783 LF, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019)). "Although MRFC[ assessments] . . . no longer include the same section labels, 'parties and the courts have continued to refer to the checkbox portion of each MRFC as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id.* (quoting *Vienna*, 2019 WL 4686718, at *4 n.8). "The Court refers herein to these separate sections of the MRFC as the 'worksheet portion' and the 'narrative portion.'" *Id.*

respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," "respond appropriately to changes in the work setting," and "be aware of normal hazards and take appropriate precautions." (*Id.* at 7 (quoting AR at 66–67, 88–91).) The state agency psychological consultants recorded these limitations in the worksheet portions of the form.

In the narrative portion, Dr. Chavez opined:

[Evidence of record] supports [Ault's] capacity to understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate adequately for routine work tasks, interact adequately with co-workers and supervisors[,] and respond appropriately to changes in the routine work setting.

(AR at 67.) Ying more summarily concluded in the narrative that Ault "can understand simple instructions[,]" "sustain simple tasks[,]" "tolerate [low personal contact][4] settings[,]" and "adapt to simple changes." (*Id.* at 88–91.)

The ALJ found the state agency psychological consultants' opinions "were supported by the medical evidence and objective evidence of record," but imposed "greater limitations" than Chavez and Ying opined "to account for [Ault's] mental limitations." (*Id.* at 18.) Specifically, in addition to limiting Ault to performing simple tasks and making simple work-related decisions, the ALJ found the following additional limitations were warranted: Ault "is precluded from production rate work and interaction with the public and should have no more than occasional interaction with co-workers and supervisors." (*See id.* at 15, 18.)

Ault singles out four of the moderate limitations the consultants opined in the worksheet portion: (1) maintain attention and concentration for extended periods; (2) maintain regular

---

[4] Ying uses the term "LPC" without defining it. (*See* AR at 90.) The ALJ referred to LPC as "low public contact" (*see id.* at 18), and the Commissioner translated it as "low personal contact." (*See* Doc. 20 at 14.) The Court finds the difference meaningless for purposes of this analysis but will adopt the Commissioner's usage of the phrase, as Ault did not take exception to it. (*See* Doc. 25.)

attendance; (3) complete a normal workday; and (4) sustain an ordinary routine without special supervision. (*See* Doc. 12 at 9–10 (citing AR at 66–67, 88–91).) Ault argues that these opinions contradict the narrative portion opinions that Ault can "'attend and concentrate for routine work tasks' or 'sustain simple tasks' without any disruption" as well as the RFC findings that Ault will "never wander off task, require additional or extended breaks, be absent, fail to comply with custom expectations of punctuality, or require any special supervision." (*Id.* at 10 (citing AR at 15).) Ault argues that the ALJ erred by relying on part of the narrative without confronting the moderate limitations incorporated within the worksheet portion. (*See id.* (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015)).) In other words, Ault argues that the ALJ "turn[ed] a blind eye to moderate . . . limitations" recorded in the worksheet portion in contravention of Tenth Circuit authority. *See Carver*, 600 F. App'x at 619. (*See also* Doc. 12 at 8–10.)

The Commissioner, however, argues that Ault's challenge to whether the RFC incorporates moderate limitations marked in the worksheet portion "asks the wrong question . . . ." (Doc. 20 at 15 (quoting *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016)) ("General terms or severity ratings such as moderate should not be used in the RFC or hypotheticals because they 'do not describe function and do not usefully convey the extent of capacity limitations.'").) The question instead, he posits, is whether the ALJ's RFC determination comports with the state agency consultants' conclusions in the narrative. (*See id.* (quoting *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447–48 (10th Cir. 2021)) (subsequent citation omitted).) "The parties spar about a point that has created a rift in this district, with well-reasoned decisions on both sides."[5] *See Cimino v. Bisignano*, No. 1:25-cv-0459 DLM, 2026 WL 295704, at *4 (D.N.M. Feb. 4, 2026) (citing

---

[5] Thankfully, the Tenth Circuit may soon weigh in on the issue, as the decision in *Bernadette S.* is on appeal. *See Sotelo v. Comm'r*, No. 25-2055 (10th Cir. May 27, 2025).

*Bernadette S. v. King*, No. 1:24-cv-0124 JB/GJF, 2025 WL 399735, at *9–10 (D.N.M. Feb. 5, 2025), *R&R adopted sub nom. Bernadette S. v. Dudek*, 2025 WL 892944 (D.N.M. Mar. 24, 2025); *Leah P. v. Kijakazi*, No. 1:21-cv-0407 SCY, 2022 WL 3042928, at *3–6 (D.N.M. Aug. 2, 2022); *Ortiz v. Kijakazi*, No. 1:21-cv-1016 KK, 2023 WL 2538834, at *3 (D.N.M. Mar. 16, 2023); *Garcia*, 509 F. Supp. 3d at 1314–18; *Vienna v. Saul*, No. 2:18-cv-0783 LF, 2019 WL 4686718, at *6 (D.N.M. Sept. 26, 2019)). (*See also* Doc. 20 at 16 (gathering cases).)

"The Commissioner's position has merit." *See Cimino*, 2026 WL 295704, at *4. "Multiple Tenth Circuit cases have held that an ALJ adequately considers or incorporates a moderate limitation assessed by a physician where the ALJ incorporates how the claimant is limited in the ability to perform work-related activities, even where the ALJ does not expressly repeat the moderate limitations." *Id.* (quoting *Padilla v. Bisignano*, No. 1:24-cv-0658 KWR/GJF, 2025 WL 2694024, at *12 (D.N.M. Sept. 22, 2025) (gathering cases)). "In *Smith v. Colvin*, for example, the Tenth Circuit evaluated whether an ALJ erred by incorporating into the RFC limitations a state agency consultant opined in the narrative, but not moderate limitations the same consultant noted in the worksheet." *Id.* (citing 821 F.3d 1264, 1268–69 (10th Cir. 2016)). In *Smith*, the consultant noted moderate limitations in the claimant's abilities to attend and concentrate for extended periods, complete a normal workday, work with others without distraction, perform at a consistent pace without excessive rest periods, and more, but she did not explicitly account for these limitations in the narrative portion. *See id.* (discussing *Smith*, 821 F.3d at 1268). "Rather, the consultant concluded that the claimant could 'engage in work that was limited in complexity and . . . manage social interactions that were not frequent or prolonged.'" *Id.* (quoting *Smith*, 821 F.3d at 1268). "The ALJ's RFC determination largely mirrored the consultant's narrative opinion, limiting the claimant to 'simple, repetitive, and routine tasks' with no face-to-face public contact."

*Id.* (quoting *Smith*, 821 F.3d at 1268–69). The claimant in *Smith*, as Ault does here, argued that the ALJ erred in failing to include these impairments in the RFC. *See id.* (discussing *Smith*, 821 F.3d at 1268). "The Tenth Circuit disagreed and held that the ALJ properly 'incorporated the functional limitations of [the claimant's] nonexertional impairments.'" *Id.* (quoting *Smith*, 821 F.3d at 1269). "The *Smith* court opined that in 'question[ing] how the [ALJ's] assessment incorporate[d] the numerous moderate limitations indicated by' the consultant, the claimant was asking 'the wrong question.'" *Id.* (quoting *Smith*, 821 F.3d at 1269 n.2). "The limitations noted in the worksheet portion 'serve[] only as an aid to [the consultant's] assessment of [RFC].'" *Id.* (quoting *Smith*, 821 F.3d at 1269 n.2). "Courts 'compare the [ALJ's] findings to [the consultant's] opinion on [RFC], not her notations of moderate limitations.'" *Id.* (quoting *Smith*, 821 F.3d at 1269 n.2).

"In *Fannin*, a more recent unpublished case, the Tenth Circuit repeated *Smith*'s admonition to 'compare the [ALJ's] findings to [the consultant's] opinion on [RFC], not [his] notations of moderate limitations.'" *Id.* at *5 (quoting *Fannin*, 857 F. App'x at 447–48). "In that case, the Tenth Circuit found no error where the consultant remarked on the worksheet that the claimant had a 'moderate'—that is, 'fair,' ability to complete a normal workday . . . and to perform at a consistent pace without an unreasonable number and length of rest periods, but opined in the narrative that the claimant had the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions [and] respond appropriately to changes in routine work setting." *Id.* (quoting *Fannin*, 857 F. App'x at 448) (quotation marks omitted).

"And in *Padilla*, the court considered *Smith*, *Fannin*, and other Tenth Circuit opinions and concluded that 'by restricting [the claimant] to simple, routine tasks and work decisions, with no

fast-paced assembly line work that is performed in the same location every day, and with' limited social interaction, the ALJ accounted for the moderate limitations noted on the worksheet, including abilities to complete a normal workday[,]" maintain regular attendance, and sustain an ordinary routine. *Id.* (quoting *Padilla*, 2025 WL 2694024, at *11–12) (citing *Bernadette S.*, 2025 WL 892944, at *5–7; *Leah P.*, 2022 WL 3042928, at *5–6).

In line with *Smith*, *Fannin*, *Padilla*, and other cases discussed herein, I find no error in the ALJ's evaluation of the state agency psychologists' opinions. "I 'reject[ the] argument that the ALJ was required to either incorporate all of the doctors' worksheet-style moderate limitations or explain, for each moderate limitation, why []he did not adopt that limitation.'" *See id.* (quoting *Leah P.*, 2022 WL 3042928, at *5). "The question is not whether there is a conflict between the RFC and the worksheet-style moderate limitations in attendance or persistence; the question is whether the RFC matches the doctors' opinions on what kind of work Plaintiff can perform despite the doctors' previously assessed limitations." *Id.* (quoting *Leah P.*, 2022 WL 3042928, at *5). Here, the RFC limits Ault to simple tasks and simple work-related decisions, work that does not involve a specific production rate or hourly quotas, work in a low-stress environment with no more than occasional changes in work tasks, no interaction with the public, and no more than occasional interactions with coworkers or supervisors. (*See* AR at 15.) The Court finds that the restrictions in the RFC adequately account for Chavez's and Ying's narrative opinions that Ault can understand and carry out simple instructions and make simple decisions, attend and concentrate for routine or simple work tasks, adequately interact with coworkers and supervisors and tolerate low personal contact settings, and appropriately respond to changes in the routine work setting. (*See id.* at 67, 88–91.) In fact, the form indicates that the questions seeking a rating on the claimant's limitations merely "help determine the individual's ability to perform sustained work activities[,]" while "the

actual mental [RFC] assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (*See id.* at 65, 87.) In other words, the consultants concluded that Ault could perform the work as outlined in the narrative portion work "despite their own assessment of moderate limitations." *See Leah*, 2022 WL 3042928, at *5.

For these same reasons, the Court is unpersuaded by Ault's argument that the ALJ erred in failing to pose additional hypothetical questions based on the moderate limitations noted on the worksheet portion. (*See* Doc. 12 at 8.) Accordingly, the undersigned recommends denying the motion with respect to this issue.

### B.    Ault has not demonstrated reversible error in the ALJ's analysis of Provencio's or Gzaskow's opinions.

Ault next argues that the ALJ did not adequately evaluate the opinions of Nurse Practitioner Desiree Provencio or consultative examiner Michael Gzaskow, MD. (*See* Doc. 12 at 12–16.) Under the revised regulations, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how she considered those two factors in evaluating medical opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.* The ALJ need only "provide enough detail such that the Court 'can follow the adjudicator's reasoning' and determine whether the 'correct legal standards have been applied.'" *Emerald v. Kijakazi*, No. 22-cv-0470 GBW, 2023 WL 6389075, at *3 (D.N.M. Sept. 30, 2023) (quoting *Keyes-Zachary*, 695 F.3d at 1166) (subsequent citation omitted).

11

In analyzing supportability, the ALJ must examine how "closely connected" the provider's opinions are to the evidence and explanations: "'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. § 404.1520c(c)(1). In analyzing consistency, the ALJ "compares [the] medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. § 404.1520c(c)(2).

### 1.     Provencio

Ault submitted to a consultative psychological evaluation with Provencio on September 15, 2023. (*See* AR at 1111.) Provencio conducted a mental status examination (MSE) and diagnosed Ault with major depressive disorder, recurrent, severe, without psychosis with anxious distress; alcohol use disorder, severe, in sustained remission; rule out substance use disorder; and rule out post-traumatic stress disorder. (*See id.* at 1111–17.) She opined that Ault has marked difficulties in her abilities to carry out complex instructions; make judgments on complex work-related decisions; persist at tasks; work without supervision; and adapt to changes at work. (*Id.* at 1117–18.) She also opined that Ault has moderate difficulties in a variety of other abilities. (*Id.*)

The ALJ summarized Provencio's opinion and found that although the mild to moderate limitations she opined were supported by the MSE results, the marked limitations were neither supported by nor consistent with the relevant record evidence. (*See id.* at 17.) The ALJ specifically noted that while Ault showed poor grooming and exhibited attention and concentration deficits during the MSE, the RFC's limitations to "non-production rate work in a low-stress environment

accounts for those deficits and for issues she may have in adapting and managing herself." (*See id.*) Ault argues that the ALJ's discussion of the supportability and consistency factors was "perfunctory, conclusory[,] and points to no [supporting] evidence . . . ." (Doc. 12 at 13.)

Regarding supportability, Ault contends that the specific MSE evidence the ALJ mentioned with respect to her grooming and attention/concentration deficits "would seemingly support Nurse Provencio's" opinion. (*See id.*) As the Commissioner notes, though, the ALJ is not subject to a heightened articulation standard. (*See* Doc. 20 at 11–12 (citing *Garland v. Dai*, 141 S. Ct. 1669, 1677 (2021); *Biestek*, 587 U.S. at 103; *T-Mobile S., LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 815 (2015)).) More importantly, the Court finds that Ault's argument on the supportability factor fails because while she "might interpret the record evidence differently than the ALJ has, it is not within this Court's purview to reweigh the evidence." *See Iven v. Kijakazi*, No. 1:21-cv-0541 WJ/DLM, 2023 WL 3762456, at *5 (D.N.M. June 1, 2023), *R&R adopted*, 2023 WL 8643255 (D.N.M. Dec. 14, 2023) (citing *Lax*, 489 F.3d at 1084 (courts may not "displace the agency's choice between two fairly conflicting views")).

With respect to the consistency factor, Ault argues that ALJ Kinnell's analysis was deficient because she "did not acknowledge the consistency between Nurse Provencio's assessment of marked limits" and Dr. Gzaskow's findings. (Doc. 12 at 14 (citing AR at 17).) The Commissioner responds that an ALJ is not required to provide such an explanation. (*See* Doc. 20 at 9 (discussing *Harrison v. Comm'r, SSA*, No. 22-4108, 2024 WL 1856553, at *4 (10th Cir. Apr. 29, 2024)).) The Commissioner is correct.

In *Harrison*, the Tenth Circuit observed that the regulatory text "provides the agency 'will explain how we considered the . . . consistency facto[r],' but it does not appear to more specifically require an explanation of whether any source's opinion was consistent with that of another

individual source." *See Harrison*, 2024 WL 1856553, at *4 (quoting 20 C.F.R. § 416.920c(b)(2)) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)); *see also* 20 C.F.R. § 404.1520c(b)(2). Thus, the ALJ here committed no error by failing to explicitly compare Provencio's and Gzaskow's opinions. *See Jerome B. v. Bisignano*, No. 2:24-cv-1065 GJF, 2026 WL 221464, at *9 (D.N.M. Jan. 28, 2026).

As in *Jerome B.*, the undersigned is unconvinced that the opinions are so consistent that the ALJ erred in failing to spend more time discussing them. *See id.* For example, while Gzaskow found Ault's ability to understand, remember, and carry out instructions is "severely compromised by physical limitations[,]" Provencio found only that Ault's ability to carry out *complex* instructions is markedly limited. (*See* AR at 515, 1117.) Moreover, while Provencio noted that Gzaskow diagnosed severe somatic symptom disorder, Provencio made no specific findings about somatic symptoms, nor did she make the same diagnosis. (*See id.* at 1111–17.)

Further, to the extent Gzaskow and Provencio made similar findings with respect to the moderate to severe/marked limitations in Ault's abilities to work with the public, coworkers, and supervisors and the severe/marked limitations in her ability to persist and adapt (*see id.* at 515, 1117), the ALJ adequately accounted for these in the RFC (*see id.* at 15). The undersigned finds Ault fails to establish reversible error in the ALJ's analysis of Provencio's opinion and recommends denying the motion on this issue.

### 2.    Gzaskow

On November 8, 2021, Ault underwent a psychological evaluation with Gzaskow. (*See id.* at 512.) Gzaskow conducted an MSE and diagnosed Ault with somatic symptom disorder with severe/predominant/persistent pain related to cardiac issues; general anxiety – severe; and dysthymia. (*See id.* at 514.) He opined that: (1) Ault's ability to understand, remember, and carry

14

out instructions is "severely compromised by physical limitations . . . with secondary anxiety/depression"; (2) she has "moderate/severe" limitations in her ability to interact with supervisors, coworkers, and the public; and (3) her ability to concentrate, persist, maintain pace, and adapt or manage herself is "severely limited due to physical problems . . . with anxiety, exhaustion and fatigue/chronic pain." (*Id.* at 515.)

The ALJ summarized Gzaskow's opinions and MSE findings. (*See id.* at 17.) She concluded that his opinions were unpersuasive because they "were not supported by citation to objective medical evidence and were not consistent with medical evidence of record showing that [Ault] is less impaired than [Gzaskow] found . . . ." (*See id.*) Ault argues that the ALJ's analysis was deficient both because the ALJ "wrongfully declar[ed] a lack of objective support from [Gzaskow's] own examination for the opinions he provided" and because the ALJ did not compare it to other opinions. (*See* Doc. 12 at 15.)

With respect to the supportability factor, Ault states that "the ALJ's recounting of Dr. Gzaskow's opinions appears to omit mention of the reasoning he explicitly gave for each of the [opined] limitations: physical symptoms, somatic symptoms, and chronic pain/fatigue." (*See id.*) She argues that the ALJ's omission was error, as Gzaskow's diagnosis of somatic symptom disorder was a "clearly objective basis for [his] assessment" that Ault "would have significant difficulty sustaining concentration and persisting consistently because of her preoccupation with physical health symptoms and seeming psychologically-enhanced experience of the same." (*See id.* at 16.) The Commissioner responds that, again, such heightened articulation is not required, and that Ault is primarily dissatisfied with how the ALJ weighed the evidence. (*See* Doc. 20 at 9–10 (citations omitted).) I agree.

In her reply brief, Ault cites *Salazar v. Kijakazi* to support the argument that the "ALJ must

explain her rejection of any medical source opinions in the record concerning the claimant's RFC." (*See* Doc. 25 at 6 (citing No. 1:21-cv-0149 KK, 2022 WL 4365864, at *6 (D.N.M. Sept. 21, 2022)).) "This requirement flows from the premise that an ALJ's decision must 'discuss the uncontroverted evidence [the ALJ] chooses not to reply upon, as well as significantly probative evidence [she] rejects . . . .'" *Salazar*, 2022 WL 4365864, at *6 (quoting *Clifton*, 79 F.3d at 1010).

Here, the ALJ discussed Ault's somatic symptoms, physical symptoms, pain, and fatigue throughout the opinion. For example, the ALJ found that Ault's "somatic symptom disorder, with severe, predominant, persistent pain" was a severe impairment and noted that one of the state agency consultants cited Ault's "tachycardia and somatic disorder symptoms, including panic attacks as a result of poor stress tolerance and overreactions to hazards and perceived threats" as support for the consultant's findings. (*See* AR at 13, 18 (citing AR at 67).) The ALJ also recounted Ault's testimony about her chest pain and its relation to her anxiety (*see id.* at 18) and observed that Ault "did not report to her medical providers the level of fatigue to which she testified to at the hearing (*id.* at 19). Still, the ALJ considered her pain, fatigue, and tachycardia when limiting her "to no more than light work with the articulated postural and environmental limitations. (*See id.* at 19.) Considering the ALJ's opinion as a whole, the undersigned finds no error in the ALJ's analysis of the supportability factor with respect to Gzaskow's opinion.

Finally, for the reasons discussed regarding the analysis of Provencio's opinion, the undersigned finds no error in the ALJ's decision not to explicitly compare Gzaskow's opinions with the opinions of other providers. (*See supra* Sec. IV(B)(1).)

The undersigned finds Ault fails to establish reversible error in the ALJ's analysis of Gzaskow's opinion and recommends denying the motion on this issue.

## V.    Conclusion

Ault fails to establish reversible error in either the ALJ's evaluation of the state agency psychologists' opinions or in her evaluation of the consultative examiners' opinions. Indeed, the ALJ provided sufficient detail for the Court to "'follow [her] reasoning' and determine [that] the 'correct legal standards have been applied.'" *See Emerald*, 2023 WL 6389075, at *3 (quoting *Keyes-Zachary*, 695 F.3d at 1166) (subsequent citation omitted). Accordingly, I recommend the Court deny Ault's motion.

**IT IS HEREBY RECOMMENDED** that Ault's Opening Brief (Doc. 12) be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE